Chicago League Ball Club

*v.*

The State of Illinois.

*Opinion filed January 21, 1903.*

Militia—*liability of State for damages caused by State troops during riot.* Where a tumult or riot assumes such proportions that it becomes necessary that the·sovereign shall interfere and exert the supreme power of the State, to that extent the general State government is the actor and the burden of expense which its acts incur is not to be borne by the city in which the act occurs, but by the State itself.

This is a claim for the use of and damage to claimant's ball park, in the city of Chicago, by certain regiments of the State Militia called into service and occupying said park for twenty (20) days under the order of the Governor as Commander in Chief, during the great railroad strike of 1894.

Suit was originally brought by claimant in the circuit court of Cook county against the city of Chicago, seeking recovery for said use and occupancy and for damages to said ground and appurtenances thereto.

After a finding for the defendant on the first trial in the circuit court (before Judge Dunne) reversed on appeal to the Appellate court, on the second trial in the circuit court, judgment for the sum of four thousand seven hundred and sixty-one ($4,761) dollars was entered and said judgment affirmed by the Appellate court; but on appeal to the Supreme court (*City of Chicago* v. *Ball Club,* 196 Ill., 54) the judgment was reversed in an opinion holding that recovery must be sought, not from the city, "but it is for the State in its sovereign capacity to determine whether compensation will be made out of its treasury." Further the court said: "When a tumult or riot assumes such proportions that it becomes necessary that the sovereign shall interfere and exert the Supreme power of the State, to that extent the general State government is the actor and the burden

of expense which its acts incur are not to be borne by the city."

In view of this decision of the Supreme Court and as conceded in the argument of the Attorney General, it remains for this Commission to determine only what would be reasonable compensation for the occupancy of and damage to the claimant's property by the State Militia.

As to the rental value thereof, witnesses widely vary in their opinion and testimony—one real estate man (Mr. Hale) who was familiar with the particular property in question and with rental values in the vicinity, fixed thirty-five ($35) dollars per day as a fair rental; Mr. Buchman, another real estate man, familiar with the property and its rental value in 1894, estimates that the ball park was worth about forty ($40) dollars per day for the whole year or one hundred and twenty ($120) dollars per day estimating the ball season to be limited to four months.

Mr. Hart, the president of the ball club, and other base ball men, testified that the grounds were worth five hundred ($500) dollars per day; but Mr. Hart admits on cross examination that the total income from the ball park for 1895, the year succeeding its occupancy by the militia, was only eight hundred and ten ($810) dollars; for the year 1894 when it was rented to the Athletic club and the bicycle club for a contingent rental based on the gross receipts Hart testified that he "thought the base ball club received some rental during 1894; could not say how much, wouldn't attempt to say it was as much as one thousand dollars." Mr. Hart also testified that the ball club was very anxious to get rid of the lease in 1894 and offered to rent the grounds for five thousand five hundred dollars or six thousand dollars. Computing the rental at the latter sum (six thousand dollars) the highest possible figure at which the rental value can be estimated would be one hundred dollars per day, even on Mr. Hart's basis of sixty days as constituting the season in which the income must be secured.

But it is a matter of common knowledge that for the purposes the grounds were used in the seasons of 1894 and 1895—bicycling, athletics, base ball or foot ball—there are at least four seasonable months or one hundred and twenty (120) days adapted to out of door sports—which would give a daily rental value of fifty ($50) dollars; or one thousand ($1,000) dollars for the twenty days the grounds were occupied by the militia.

As to the items of damage as disclosed in the bill of particulars ("Exhibit A."), these are confessedly made up by Mr. Hart from a memorandum made some time after the militia vacated the grounds; they are admitted to be estimates, based on hearsay. The following items should clearly be deducted:

Tickets, as to which the evidence was stricken out .................................. $50.00

Plumbing, as to which the evidence was stricken out ................................ 40.00

Hurdles, the number being estimated or guessed at from hearsay; the statement or estimate of 28 hurdles at $2.25 being stricken out ..... 56.25

Benches, number not known ................ 50.00

Lumber, bought in 1892, used in 1893, witness did not know whether or not it was there July 6, 1894 ............................ 80.00

Repairing bicycle track, $750. Mr. Hart did not know how much he paid for the repairing; did not know whether it was as much as $100. Later in his testimony he says more than $100 was spent, how much he did not know; showing his estimate is pure guess work; but allowing $100, there should be deducted from the charge as made ........... 650.00

Repairs on diamond. Mr. Hart admitted he did not know how much was spent on repairing the diamond; there is evidence that it never was repaired; so it would seem that the item of charge for this repair should be deducted as being either a guess or fictitious ......... 500.00

As to the two last charges, apparently after thoughts, the first is based on a loss ........  611.00
of profit imaginary and not capable of computation, supported by no evidence; as is true of the last charge ..................  321.91

$2,359.16

Deducting these items from the total ($3,258.06) claimed in the bill of particulars, we think one thousand ($1,000) dollars a liberal estimate and allowance for damage to the property and adopting the sum of six thousand ($6,000) dollars as a fair yearly rental value of the grounds, this being the amount for which Mr. Hart testified he offered to rent it for the year 1894— and limiting the season to four months or one hundred and twenty (120) days during which the grounds were available for the uses to which they were intended, would make a rental value of fifty ($50) dollars per day which approximates the value fixed by the only witnesses (Hale and Buchman) whose opinions are entitled to special consideration. Adopting this as the fairest basis of determining a reasonable compensation for the use of the grounds for the twenty (20) days they were occupied by the militia, we consider one thousand ($1,000) dollars for rental and one thousand ($1,000) dollars for damages and destruction of property should amply and fairly recompense the claimant.

While this amount is less than that for which judgment was rendered in the circuit court, we feel in no way called upon to give undue consideration to that finding.

The question of damages as supported by the evidence is no more conclusively established by that judgment than was the interpretation of the law as to liability.

We therefore allow and award to said claimant the sum of two thousand ($2,000) dollars in full for all demand for rent, occupancy of grounds and damages.